UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
MITCHELL KALWASINSKI,
                                   :
              Plaintiff,               <u>REPORT & RECOMMENDATION</u>
                                   :
       -against-                       08 Civ. 9593 (PAC)(MHD)
                                   :
FEDERAL BUREAU OF PRISONS, ET AL.,
                                   :
              Defendants.
                                   :
-----------------------------------X

TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:


       Plaintiff Mitchell Kalwasinski filed this <u>pro se</u> lawsuit under
the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to seek an
order compelling disclosure from the Federal Bureau of Prisons
("the Bureau") of information relating to his incarceration in New
York's Metropolitan Correctional Center ("MCC") in September and
October of 2004. Specifically, Kalwasinski seeks records regarding
the delivery and return of clothing provided by his family members,
as well as counseling reports and visitation records maintained
during his stay at MCC. The Bureau has provided plaintiff with some
responsive records in their entirety, provided others with
redactions and withheld certain other records under various FOIA
exceptions. The Bureau has moved for summary judgment to establish

the propriety of its redactions and withholding of records.[1] In turn, plaintiff has sought summary judgment in his favor on his FOIA claim, and also seeks relief that we deem to be a motion for leave to amend his complaint.

For the reasons that follow, we recommend that defendant's motion for summary judgment be granted and plaintiff's motions be denied.

---

[1] We note that plaintiff served the individual defendant in this action, Janice Galli McLeod, Associate Director of the United States Department of Justice's Office of Information and Privacy, with the assistance of the United States Marshals on January 6, 2009. (Dkt entry #6). However, when answering the complaint on behalf of the Bureau, the United States Attorney stated that plaintiff had not named a defendant other than the Bureau, and so answered the complaint only on the Bureau's behalf. (Answer at 1 n.1, dkt entry # 10). Nevertheless, it appears that plaintiff may assume that he is also suing Ms. McLeod since he earlier sought leave to amend the caption to include her as a defendant. To avoid any ambiguity, we sua sponte recommend that plaintiff's claim against the individual defendant (if the complaint be so interpreted) be dismissed in light of the fact that FOIA authorizes claims only against federal agencies, not individual defendants. See, e.g., Tomscha v. Giorgianni, 2004 WL 1234043, *3 (S.D.N.Y. June 3, 2004); Webb v. Ashburn, 1997 WL 118355, * 5 (S.D.N.Y. Mar. 17, 1997); Pray v. F.B.I., 1995 WL 764149, * 3 (S.D.N.Y. Dec. 28, 1995); Williams v. McCausland, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992). We note that we previously denied plaintiff's request to amend his complaint to list the individual defendant in the caption on the same basis. (Endorsed Order dated Apr. 13, 2009). Therefore, we proceed to consider the summary-judgment motion as pertaining only to the Bureau. (Mem. of Law in Supp. of Def.'s Mot. for Summ. J., 1).

I. <u>The Factual and Procedural Record</u>

Plaintiff, currently in the custody of the New York State correctional system, was in the Bureau's custody and housed at the MCC from the middle of September 2004 until the end of October 2004, apparently as a pre-trial detainee. (Decl. of Vanessa Herbin-Smith in Supp. of Def.'s Mot. for Summ. J., dated Mar. 27, 2009, ¶ 2 & Ex. 1). By letter dated August 23, 2005, addressed to the Bureau's Northeast Regional Office, plaintiff requested disclosure under FOIA of two categories of records pertaining to his incarceration at MCC. First, he sought records concerning clothing that his family had brought for him to wear to his trial, including records of the type, number and color of the items delivered and the date and process by which the clothing was returned. (<u>Id.</u>, Ex. 1). Second, he sought counseling records, including "inmate attitude reports", maintained during his time at MCC, as well as visitation records listing the dates and times that his visitors were approved or denied visitation and the reasons for any denials. (<u>Id.</u>).

The Bureau's regional office forwarded plaintiff's request to the MCC for its staff to search for responsive records. (<u>Id.</u> at ¶ 14). The MCC staff, in consultation with staff in MCC's

Correctional Systems Management Department –- the unit that oversees the receipt and discharge of federal inmates' property -- determined that records regarding clothing received by inmates for court appearances are kept in a handwritten logbook. (Id. at ¶ 15). However, a search of the logbook showed that no entries had been made since June 2001. (Id.). Apparently, the MCC staff took no further steps to determine whether records reflecting clothing received by inmates for their court appearances were maintained in another location.

The MCC staff also consulted with MCC's Correctional Systems Management Department and the MCC Unit Team, an administrative office tasked with handling inmates' files, to determine where counseling and visitation records that were responsive to plaintiff's request would be located. (Id. at ¶ 17). They determined that such records would have been maintained in his inmate file, and MCC staff therefore searched that file, as well as a database of disciplinary reports. (Id. at ¶ 18). The staff did not locate any "inmate attitude" or disciplinary reports pertaining to plaintiff. (Id.). However, they did identify eighteen pages of documents that were potentially responsive to plaintiff's request for visitation records, and these documents were sent to the Bureau's regional office. (Id. at ¶¶ 8, 18 ).

By letter dated August 16, 2006 the Bureau provided plaintiff with one page of the records in its entirety, three pages with certain information redacted and notification that fourteen pages of records were being withheld entirely. (Id. at ¶ 9 & Ex. 2). The Bureau advised plaintiff that it had redacted and withheld certain records pursuant to 5 U.S.C. § 552(b)(6), which exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy", and pursuant to 5 U.S.C. §§ 552(b)(7)(C) & (F), which authorize agencies not to disclose "records or information compiled for law enforcement purposes, but only to the extent that the production of such . . . records . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . or (F) could reasonably be expected to endanger the life or physical safety of any individual". 5 U.S.C. §§ 552 (b)(6), (7)(C), (7)(F). (Herbin-Smith Decl. at ¶ 9 & Ex. 2).

On September 11, 2006 plaintiff filed an administrative appeal challenging the Bureau's redactions and withholding of records. (Herbin-Smith Decl. at ¶ 10 & Ex. 3). He challenged the Bureau's actions on the grounds that the public has an interest in knowing how the government handles inmates' property and administrative tort claims. (Id., Ex. 3). He also noted that correctional staff

members' identities could be redacted from the records to account for any privacy concerns. (Id.).

His appeal was denied on November 20, 2007 by the Department of Justice's Office of Information and Privacy, although the justification for withholding certain information was slightly modified. (Id. at ¶ 11 & Ex. 4). Instead of relying on 5 U.S.C. § 552(b)(6), the denial letter justified withholding information under both 5 U.S.C. § 552(b)(2), which exempts from disclosure matters "related solely to the internal personnel rules and practices of an agency", and 5 U.S.C. §§ 552(b)(7)(C) & (F), which the Bureau had previously cited. (Herbin-Smith Decl., Ex. 4). The denial letter also informed plaintiff of his right to judicial review, which he invoked by filing his complaint in this lawsuit dated August 5, 2008. (Herbin-Smith Decl., Ex. 4; Compl.).

On March 27, 2009, the same date on which the Bureau filed its summary-judgment motion, it made a discretionary release to plaintiff of three additional pages of records in their entirety. These consisted of "internal administrative markings and codes" responsive to plaintiff's request for visitation records that had previously been withheld entirely under 5 U.S.C. § 552(b)(2). (Herbin-Smith Decl. at ¶ 13). It also released a one-page record in

its entirety pertaining to plaintiff's clothing, a document that had been discovered in a subsequent search. (Id. at ¶¶ 13, 16). Specifically, after plaintiff filed his complaint, MCC staff contacted MCC's Correctional Systems Management Department to determine if there was another location in which records responsive to plaintiff's clothing-related request might be found. (Id. at ¶ 16). The department's staff indicated that it keeps a property form folder for each inmate, although it only maintains an inmate's folder for two years after the inmate is discharged from the Bureau's custody. (Id.). Despite more than two years having elapsed since plaintiff was released from the Bureau's custody, plaintiff's property form folder was located and MCC staff identified one responsive document in it. That inmate personal-property record indicated that several items of clothing had been shipped to plaintiff at the New York State Downstate Correctional Facility. (Id.).


## II. The Parties' Summary-Judgment Motions


Defendant has moved for summary judgment, invoking FOIA exemptions 6 and 7(C) for all of its redactions and withholding of records, contending that the documents contain "personal

identifying information of third parties." (Def.'s Mem. at 10).[2]
Defendant also cites FOIA exemption 7(F) in support of its
redactions of the names of other inmates and their visitors from
the two pages of the MCC visitor log book that it provided to
plaintiff. (Def.'s Mem. at 14; Herbin-Smith Decl., Ex. 5). In
support of its position, the Bureau has proffered the declaration
of Ms. Vanessa Herbin-Smith, the Supervisory Paralegal Specialist
for the Bureau's Northeast Regional Office, who assists in
coordinating responses to FOIA requests. Ms. Herbin-Smith recounts
the history of plaintiff's request and the Bureau's response and
offers an explanation for the redactions and withholding of certain
records. (See Herbin-Smith Decl. at ¶¶ 1, 6-19, 21-27). The Bureau
has also submitted a Vaughn index, which specifies the nature of
the information withheld from plaintiff and states the
justification for the non-disclosure of this information. (Id. at
¶ 20 & Ex. 5).


In response to the motion, plaintiff has withdrawn his request
for information that was redacted on two pages of the visitor log

---

[2] We note that the Bureau voluntarily disclosed to plaintiff
all of the records that it had withheld previously under FOIA
Exemption 2, and therefore the applicability of that exemption is
no longer at issue. (Def.'s Mem. at 6; Herbin-Smith Decl. at ¶
13, Ex. 5).

book consisting of the names of other inmates and their visitors
who are not related to plaintiff. (Mem. of Law in Supp. of Pl.'s
Mot. for Summ. J., 13). He states that his FOIA request was limited
to information pertaining to himself and his family members, and
therefore he has no interest in information concerning other
inmates and their visitors. (Id.). Defendant notes that this is the
only information that it withheld pursuant to FOIA exemption 7(F),
and therefore the applicability of this exemption is no longer at
issue. (Mem. of Law in Opp'n to Pl.'s Cross-Mot. for Summ. J. and
in Further Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply Mem."),
1 n.1).

The remaining records consist of eleven pages of records
printed from the National Crime Information Center ("NCIC")
database as part of the Bureau's background checks on plaintiff's
potential visitors –- all withheld in their entirety –- and a one-
page form submitted to the Bureau by one of plaintiff's potential
visitors from which certain information was redacted. As to these,
plaintiff argues that defendant has failed to justify the
application of the cited FOIA exemptions. (See Herbin-Smith Decl.,
Ex. 5). He first argues that the Bureau's search for records
responsive to his request was inadequate, targeting in particular
its failure to locate his property form folder on its initial

search. (Pl.'s Mem. at 6-9). He also contends that he already knows the information about his visitors that is contained in the records that have been withheld and redacted, and therefore argues that the disclosure of the information would not constitute a privacy violation. (Id. at 10-12). Plaintiff submits that any information that is of a private nature in the records can be redacted, and that the Bureau is obliged under FOIA to provide him with any reasonably segregable non-exempt information. (Id. at 10, 13). Finally, plaintiff cites a supposed public interest in disclosure of the records, because they would (1) inform the public that the Bureau conducts criminal background checks on and maintains records pertaining to potential visitors and (2) correct the erroneous assumption, created by the Bureau's acknowledgment that it maintains records of prospective visitors' criminal histories, that these prospective visitors have engaged in unlawful activity. According to plaintiff, this public interest warrants disclosure of the records. (Id. at 11-12).

In reply, defendant notes that the belated production of plaintiff's inmate personal-property record suggests that the Bureau's search for responsive records was exhaustive instead of insufficient. (Def.'s Reply Mem. at 1-2). It also argues that plaintiff's knowledge of the background-check information that has

10

been withheld is immaterial, as information about third parties disclosed in response to plaintiff's FOIA request would also become available to the general public. (Id. at 3). Finally, the Bureau states that it has endeavored to provide plaintiff with all reasonably segregable portions of the material that he requested, but that it is not required to produce records that would be meaningless or blank once the exempt material is redacted. (Id. at 4).

In further support of his cross-motion for summary judgment, plaintiff renews his critique of the procedure that the Bureau used to search for responsive records and disputes the adequacy of defendant's segregability analysis. (Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. and in Further Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Reply Mem."), 1-3).

III. <u>Plaintiff's Motion to Amend His Complaint</u>

In seeking summary judgment, plaintiff also asks the court to "allow[] the plaintiff [to] file a complaint" under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), within six months of the court's decision on the parties' summary judgment motions, or to "convert this F.O.I.A. Case to a

complaint" under Bivens. (Pl.'s Mem. at 14; Pl.'s Reply Mem. at 1, 4). Plaintiff appears to contend that the Bureau's failure to conduct a thorough and timely search for records responsive to his FOIA request prevented him from filing a timely Bivens claim seeking damages for the loss or theft of his clothing while he was in federal custody. (Pl.'s Mem. at 9; Pl.'s Reply Mem. at 2). We interpret plaintiff's request as one to amend his complaint to assert a Bivens claim for damages for his lost clothing.

Defendant has neither acknowledged nor responded to plaintiff's requests for leave to pursue a Bivens claim.

<u>ANALYSIS</u>

We first address the parties' motions for summary judgment on plaintiff's FOIA claim, and then address plaintiff's motion to amend his complaint.

A. <u>Motions for Summary Judgment on Plaintiff's FOIA Claim</u>

"FOIA was enacted 'to facilitate public access to Government documents,'" by "'pierc[ing] the veil of administrative secrecy and . . . open[ing] agency action to the light of public scrutiny.'"

12

Associated Press v. U.S. Dep't of Def., 554 F.3d 274, 283 (2d Cir. 2009) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991); Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). FOIA requires that federal agencies disclose records in their possession unless the documents are covered by one of nine categories of enumerated exceptions. 5 U.S.C. § 552. Since "'disclosure, not secrecy, is the dominant objective of the Act . . . these exemptions have been consistently given a narrow compass.'" Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting Rose, 425 U.S. at 361; U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989)).

A party requesting records under FOIA must first apply to the agency for disclosure, but if the agency declines to provide requested material, the requester may seek judicial review, which is to be de novo. 5 U.S.C. § 552(a)(4)(B). See Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 73 (2d Cir. 2009); Halpern v. F.B.I., 181 F.3d 279, 287 (2d Cir. 1999). The agency bears the burden of demonstrating the applicability of a statutory exemption to each document or document segment that it has withheld. Wilner, 592 F.3d at 68; Associated Press, 554 F.3d at 283-84. Moreover, we are mindful that we should "construe FOIA exemptions narrowly, resolving all doubts in favor of disclosure." Wood v. F.B.I., 432

F.3d 78, 83 (2d Cir. 2005). <u>Accord</u> <u>Associated Press</u>, 554 F.3d at
283.

    For the agency to meet its burdens of proof and persuasion, it
will typically rely on an affidavit or declaration, although the
court may also, in limited circumstances, order <u>in</u> <u>camera</u> review of
disputed documents. <u>See</u> <u>Wilner</u>, 592 F.3d at 72-73; <u>Carney v. U.S.
Dep't of Justice</u>, 19 F.3d 807, 812 (2d Cir. 1994); <u>Radcliffe v.
I.R.S.</u>, 536 F. Supp. 2d 423, 440 (S.D.N.Y. 2008); <u>New York Times
Co. v. U.S. Dep't of Def.</u>, 499 F. Supp. 2d 501, 518 (S.D.N.Y.
2007). To obtain summary judgment, the agency must establish that
its search for records responsive to the FOIA request was
"adequate", or "a good faith effort to search for the requested
documents, using methods reasonably calculated to produce documents
responsive to the FOIA request." <u>Carney</u>, 19 F.3d at 812; <u>Garcia v.
U.S. Dep't of Justice, Office of Info. and Privacy</u>, 181 F. Supp. 2d
356, 366 (S.D.N.Y. 2002) (internal quotation marks omitted). If the
agency is seeking to justify non-disclosure of responsive documents
under a FOIA exemption, it must also show that the documents that
it withheld fall within that exemption. "'Summary judgment is
warranted on the basis of agency affidavits when the affidavits
describe the justifications for nondisclosure with reasonably
specific detail, demonstrate that the information withheld

14

logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Wilner, 592 F.3d at 73 (quoting Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)). Accord Carney, 19 F.3d at 812.

For a requesting party to demonstrate that summary judgment is not warranted on the basis of the agency's affidavits, he must "make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." Carney, 19 F.3d at 812 (internal citation omitted). "'Ultimately, an agency's justification for invoking a FOIA exemption is sufficient [to award it summary judgment] if it appears logical or plausible.'" Wilner, 592 F.3d at 73 (quoting Larson, 565 F.3d at 862).

First, we evaluate the adequacy of the Bureau's search for records responsive to plaintiff's FOIA request. Ms. Herbin-Smith's declaration, proffered by defendant, represents that the Bureau "has conducted searches of all [Bureau] files reasonably likely to contain records responsive to plaintiff's FOIA request." (Herbin-

Smith Decl. at ¶ 19). We are to accord this declaration a
"presumption of good faith." Carney, 19 F.3d at 812 (internal
quotation marks omitted).

As described in the declaration, the Bureau's initial search
for records pertaining to the plaintiff's family's delivery of
clothing for his court appearance and the return of that clothing
to plaintiff's relatives was plainly insufficient. During their
search for records responsive to plaintiff's request in 2005 or
2006, MCC staff members were told by the MCC department that
manages the receipt and discharge of inmate property that they
should search for relevant records in a handwritten log book.
(Herbin-Smith Decl. at ¶ 15). However, upon discovering that there
were no entries in the log dated after June 2001, the staff members
neglected to investigate further, such as by inquiring whether an
alternative system of record-keeping had been implemented in the
interim. (Id.).[3]

---

[3] We note that although MCC typically maintains an inmate's
property folder for only two years after the inmate's release
from the federal system, the initial search for records
responsive to plaintiff's request concluded in or before August
2006, so that plaintiff's October 2004 release from MCC would
have been within the two-year period for which his folder would
have been retained. (Herbin-Smith Decl. at ¶¶ 2, 9, 16).

Nonetheless, MCC staff later remedied this deficiency by searching for and obtaining plaintiff's property form folder, which contained the responsive inmate personal-property record that the Bureau eventually disclosed to plaintiff in its entirety. (Id. at ¶ 16). The agency's belated completion of a reasonable search does not in itself indicate that its efforts, viewed in their entirety, were inadequate or that the Bureau acted in bad faith. See Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489-90 (2d Cir. 1999) (agency's disclosure of documents discovered after "second, more exhaustive, search" does not establish insufficiency of search or agency's bad faith).[4]

Plaintiff argues that the Bureau acted in bad faith by timing the disclosure of his inmate personal-property form to prevent him from using the record in an administrative tort claim that he had filed under the Federal Tort Claims Act. (Pl.'s Mem. at 8-9; Aff. of Mitchell J. Kalwasinski in Supp. of Mot. for Summ. J., executed Aug. 13, 2009, Ex. 1). However, plaintiff does not provide any evidence establishing coordination between the MCC staff members

---

[4] Similarly, although plaintiff does not directly press this argument, we note that the Bureau's voluntary disclosure of three pages of previously-withheld visitation records to plaintiff does not necessarily establish that its initial response was in bad faith. Halpern, 181 F.3d at 294-95.

17

tasked with searching for records responsive to his FOIA request and the Bureau staff that processed his tort claim, rendering his assertion mere, and unpersuasive, speculation. Once the Bureau's Regional Office learned of the existence of plaintiff's inmate property record, sometime after August 2008, it apparently disclosed it to plaintiff in a relatively timely manner in March 2009. (See Herbin-Smith Decl. at ¶ 16). Moreover, we note that plaintiff obtained the inmate personal-property form in time to submit it in support of his request for reconsideration of his administrative appeal, which resulted in plaintiff obtaining a settlement offer. (Pl.'s Mem. at 8; Kalwasinski Aff., Ex. 7).[5]

Plaintiff also asserts that the Bureau's search was inadequate because it failed to locate "package room records", "counseling records" and "approved clothing request forms maintained by counseling services." (Pl.'s Mem. at 3). However, a representation in an agency's affidavit as to the adequacy of its search cannot be overcome by a requesting party's mere speculation as to the existence of additional records. See Carney, 19 F.3d at 813. The affidavit proffered by the Bureau contends that MCC staff reviewed

_____

[5] Plaintiff has apparently communicated his willingness to accept this offer if the settlement check can be made payable to a third party. (Pl.'s Mem. at 4).

18

all records in plaintiff's inmate file, a file that contains "all documentation related to an inmate's period of incarceration in the federal prison system." (Herbin-Smith Decl. at ¶¶ 17-18). Moreover, MCC staff consulted with the department at MCC responsible for the receipt and discharge of inmate property regarding the location of documents that would potentially be relevant to plaintiff's request. (Id. at ¶ 15). We cannot conclude that these efforts represent an unreasonable search, and therefore decline to recommend the denial of defendant's summary-judgment motion on this basis.

We next evaluate whether the Bureau has established the applicability of FOIA exemptions 6 and 7(C) to the eleven pages of records withheld from plaintiff in their entirety and the one-page record disclosed to plaintiff with certain information redacted.[6]

---

[6] We note that, unlike in other administrative-law contexts, the Bureau's failure to consistently assert the applicability of FOIA exemption 6 at the agency level does not bar it from relying on that exemption here, especially given plaintiff's failure to object to its invocation on this ground. See Farmworkers Legal Servs. of North Carolina, Inc. v. U.S. Dep't of Labor, 639 F. Supp. 1368, 1370-71 (E.D.N.C. 1986) (citing cases); Cook v. Watt, 597 F. Supp. 545, 548 (D. Ala. 1983). See also Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977) (in FOIA context court does not review quality of agency decision-making, but rather determines application of exemptions de novo). Cf., e.g., Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 94-95 (1943).

Exemption 6 permits non-disclosure of personnel, medical and "similar files", so long as disclosure of a requested record "would constitute" an invasion of a person's privacy that is "clearly unwarranted," or not outweighed by the public's interest in disclosure of the file. 5 U.S.C. § 552(b)(6). See U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982); Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs, 958 F.2d 503, 508-10 (2d Cir. 1992). The term "similar files" has been interpreted broadly to apply whenever "information which applies to a particular individual is sought from Government records"; accordingly, the scope of exemption 6 is determined by balancing the individual's privacy interest against the public interest in disclosure of the information in question, an evaluation that does not depend on the type of file in which the information is stored. Washington Post Co., 456 U.S. at 600-02. The relevant public interest is the "extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 497 (1994) (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989)).

To justify non-disclosure of a record under exemption 7(C),

the agency must demonstrate that it was compiled for law-enforcement purposes and that its disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To determine whether records were compiled for law-enforcement purposes, we are to evaluate "'how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" Banks v. Dep't of Justice, 538 F. Supp. 2d 228, 239 (D.D.C. 2008) (quoting Jefferson v. Dep't of Justice, 284 F.3d 172, 176-77 (D.C. Cir. 2002)). Records generated in the process of maintaining custody of a federal inmate may fall within the scope of records compiled for law-enforcement purposes. See id. at 240. The same balancing test between the individual's privacy interest and the public's interest in disclosure applies to agency invocations of FOIA exemptions 6 and 7(C), although exemption 7(C) tilts more strongly in favor of non-disclosure. Fed. Labor Relations Auth., 510 U.S. at 496 n.6; Associated Press, 554 F.3d at 284-85 n.9.

     As a threshold matter, we conclude that the records that the Bureau has withheld or disclosed in redacted form fall under the broad definition of "similar files" in FOIA exemption 6. The records contain information that pertains to particular

individuals, including their birth dates, social security numbers and telephone numbers. (Herbin-Smith Decl., Ex. 5). This puts the records into the category of "similar files" that are potentially exempt from disclosure under exemption 6, subject to the outcome of the applicable balancing test. See Washington Post, 456 U.S. at 600-02. Plaintiff's conclusory assertion to the contrary does not alter this determination. (Pl.'s Mem. at 10).

We also conclude that the records that the Bureau has withheld and disclosed in redacted form were compiled for law-enforcement purposes, and therefore may be exempt from disclosure under FOIA exemption 7(C).[7] The Bureau of Prisons, a law-enforcement agency, compiled the background-check materials at issue in furtherance of its law-enforcement mission of approving, tracking and identifying visitors to Bureau facilities. (Herbin-Smith Decl. at ¶ 23). Screening and identifying an inmate's visitors can be said to relate to the enforcement proceeding against the inmate by, for

---

[7] Plaintiff asserts in conclusory fashion that the records that the Bureau has withheld and disclosed in redacted form "cannot possibly be both 'similar files' under exemption[] 6 and 'compiled for law enforcement purposes' under exemption 7(C)." (Pl.'s Mem. at 11). He cites no authority for this proposition, and we are not aware of any. See, e.g., Associated Press v. U.S. Dep't of Justice, 549 F.3d 62, 66 (2d Cir. 2008) (upholding decision exempting records from disclosure under FOIA exemptions 6 and 7(C)). Therefore, we evaluate the applicability of each of these exemptions to the material that the Bureau has withheld.

example, ensuring that the inmate does not use his contacts with outside visitors to coordinate criminal activities, either inside or outside the prison facility. See Banks, 538 F. Supp. 2d at 240-41 (determining that United States Marshals properly withheld third-parties' NCIC records in their entirety under FOIA exemption 7(C)). See also Duffin v. Carlson, 636 F.2d 709, 713 (D.C. Cir. 1980) (treating Bureau of Prisons as law-enforcement agency in evaluating application of FOIA exemption 7(D) to files containing information from confidential sources about inmates' criminal activities); Ruston v. Dep't of Justice, 2007 WL 809698, *1, 4-5 (D.D.C. Mar. 15, 2007) (determining that the Bureau of Prisons is a law-enforcement agency for purposes of FOIA exemption 7 and that redaction of third-party information in records of psychological examination by Bureau psychologist was warranted under exemption 7(C)).

We next evaluate whether the prospective visitors who were the subject of the background checks that generated the records in dispute have a privacy interest in the information that the Bureau has withheld. This information includes the prospective visitors' names, birth dates, social security numbers, criminal histories, and telephone numbers. (Herbin-Smith Decl., Ex. 5). "It is well established that identifying information such as names, addresses,

and other personal information falls within the ambit of privacy concerns under FOIA." Associated Press, 554 F.3d at 285. Accord Fed. Labor Relations Auth., 958 F.2d at 510-11 (recognizing individual's privacy interest in preventing dissemination of his or her name and home address through FOIA exemptions 6 and 7(C)); Adamowicz v. I.R.S., __ F. Supp. 2d __, 2009 WL 4277237, *17-18 (S.D.N.Y. Nov. 24, 2009) (recognizing third-parties' privacy interests in their names, personal telephone numbers, social security numbers and other identifying information for purposes of analyzing FOIA exemptions 6 and 7(C)); Phillips v. Immigration and Customs Enforcement, 385 F. Supp. 2d 296, 304 (S.D.N.Y. 2005) (recognizing privacy interest in withholding date of birth under FOIA exemption 6). Furthermore, in light of the strong privacy interest at stake, information about a third-party's criminal history that a government agency is merely storing as a compilation has been categorically exempted from disclosure pursuant to FOIA exemption 7(C). Reporters Comm., 489 U.S. at 780 (categorically exempting third-parties' F.B.I. "rap sheets" from disclosure under FOIA exemption 7(C)).

Plaintiff argues that releasing the third-parties' identifying information would not constitute an invasion of their privacy because he already knows the information contained in the documents

24

that are being withheld. (Pl.'s Mem. at 10-11). However, it is
well-settled that decisions about whether to disclose or withhold
information under FOIA cannot be based on the identity of the
requesting party. Nat'l Archives and Records Admin. v. Favish, 541
U.S. 157, 170 (2004); Reporters Comm., 489 U.S. at 771-72.[8] The
Bureau persuasively contends that if records containing the third-
parties' identifying information were released to the plaintiff,
the third-parties' information then would be available to the
general public. (Def.'s Reply Mem. at 3). Therefore, plaintiff's
knowledge of the information that the Bureau has withheld does not
minimize the third-parties' privacy interests in keeping this
information from the general public.[9]

We next examine the public interest in the release of the
information that has been withheld. Plaintiff argues that the

---

[8] Although not applicable here, an exception to this general
rule applies in a case "in which the objection to disclosure is
based on a claim of privilege and the person requesting
disclosure is the party protected by the privilege." Reporters
Comm., 489 U.S. at 771.

[9] Kalwasinski also contends that there are certain
categories of information that the Bureau compiles as part of
inmates' visitors' background checks, such as visitors' criminal
histories, for which the Bureau would not have found any
applicable information for his visitors, and accordingly his
visitors have no privacy interest in these categories of
information. (Pl.'s Mem. at 10-13; Pl.'s Reply Mem. at 2). We
address this argument in our segregability analysis below. See
infra, p. 31.

public has an interest in knowing that the Bureau conducts criminal background checks on and maintains records pertaining to inmates' prospective visitors, including young children, who have no criminal histories. (Pl.'s Mem. at 12, 14).[10] However, we view the public interest in obtaining this information through the disclosure of the documents at issue to be exceedingly low, as the Bureau readily admits in publicly-available documents that it conducts a background check on all potential visitors of the inmates in its custody at MCC, including both family and non-family visitors. <u>See</u> U.S. Department of Justice, Federal Bureau of Prisons, Metropolitan Correctional Center, Institution Supplement NYM 5267.06F, "Visiting," available at http://www.bop.gov/locations/institutions/nym/NYM_visit_hours.pdf, ¶ 4H (accessed Mar. 9, 2010).[11]

---

[10] To the extent that plaintiff has suggested that the public has an interest in the disclosure of the requested documents to discover that the Bureau steals, loses or destroys inmates' property and that the Bureau and the New York state correctional system "conspired" to deny his tort claim -- presumably by the Bureau delaying the release of documents relevant to plaintiff's tort claim about the disappearance of certain items of his clothing -- we do not see how the release of any of the information still being withheld by the Bureau, which relates to background checks completed on plaintiff's prospective visitors, would further these purported interests. (<u>See</u> Herbin-Smith Decl., Exs. 3 & 5).

[11] We note that the instructions to MCC inmates regarding arranging for background checks to be conducted on their prospective visitors indicate that "[t]he entire visiting packet shall be stamped FOI exempt and be placed in the inmate's file."

Plaintiff also contends that there is a public interest in the release of the documents to allow prospective visitors to combat the erroneous implication that they have engaged in criminal activity that is created by the Bureau's acknowledgment that it maintains records of their criminal histories. (Pl.'s Mem. at 12, 14). However, unlike plaintiff, we do not view the Bureau's acknowledgment that it maintains records of prospective visitors' criminal histories to imply that these individuals have, in fact, been the subject of criminal proceedings. As plaintiff correctly suggests, the Bureau's search of a prospective visitor's criminal history may well yield no evidence of criminal activity. However, the release of the documents at issue is not necessary to prove this common-sense proposition.

Therefore, we view the balance between the third-parties' interests in non-disclosure of their identifying information and the public interest in disclosure of the information that the Bureau has withheld from plaintiff to tip strongly in favor of non-disclosure. As such, the information that the Bureau has withheld is plainly exempt from disclosure under FOIA exemption 7(C), and non-disclosure likely would be justified under FOIA exemption 6 as

---

Id.

well. See Carbe v. Bureau of Alcohol, Tobacco and Firearms, 2004 WL 2051359, *12 n.9 (D.D.C. Aug. 12, 2004) (approving Bureau of Prisons withholding background checks on inmate's prospective visitors under FOIA exemption 7(C)). See also Reporters Comm., 489 U.S. at 780 (noting that relevant public interest in obtaining third-party's criminal history is at nadir when the government holds the information as a compilation instead of record of government activity and determining that such information is categorically exempt from disclosure under FOIA exemption 7(C)).

The final step in our analysis is to determine whether any portion of the records that the Bureau has withheld should be released with information that is exempt from disclosure redacted. Consistent with its policy favoring disclosure, FOIA states that if a record contains information that is exempt from disclosure, "[a]ny reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). A determination of whether non-exempt information in a record is reasonably segregable turns on the intelligibility of the record after the removal of the exempt information and the burden that removing the exempt material would impose on the agency. Mokhiber v. U.S. Dep't of Treasury, 335 F. Supp. 2d 65, 71 (D.D.C. 2004) (citing Yeager v. Drug Enforcement

Admin., 678 F.2d 315, 322 n.16 (D.C. Cir. 1982)). To the extent that the removal of exempt information would leave "little more than templates", so that "the purpose served by releasing the records in full is no longer served," disclosure of redacted records is not required. Warren v. Soc. Sec. Admin., 2000 WL 1209383, *5 (W.D.N.Y. Aug. 22, 2000).

Plaintiff contends that the Bureau can disclose the eleven pages of records that it has withheld entirely with the third-parties' identifying information redacted, and that additional information may be segregable and disclosed on the three pages of documents that the Bureau has produced in redacted form. (Pl.'s Mem. at 10).[12] However, the Bureau represents that the segments that

_____

[12] Plaintiff also suggests that we conduct an in camera review of the records that the Bureau has withheld and disclosed in redacted form to determine whether they contain non-exempt information that can be segregated and disclosed. (Id.). Although we are afforded discretion in ordering an in camera review under FOIA, doing so has the potential to consume significant judicial resources, and we are mindful of the advice not to resort to in camera proceedings "routinely", but instead to rely on agency affidavits to the extent that they are sufficiently specific and reliable. Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978). Accord O'Keefe v. U.S. Dep't of Def., 463 F. Supp. 2d 317, 329 (E.D.N.Y. 2006) ("'[I]n camera review is considered the exception, not the rule.'" (quoting Local 3 Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B., 845 F.2d 1177, 1180 (2d Cir. 1988))). We consider Ms. Herbin-Smith's declaration proffered by the Bureau to be sufficiently detailed and reliable in addressing the segregability of information in the records that the Bureau has withheld in whole or in part to preclude the need for in

were withheld from two of the three redacted pages consist solely of information about other inmates and their visitors, information that plaintiff has conceded his FOIA request does not cover. (Def.'s Reply Mem. at 1 n.1; Herbin-Smith Decl. at ¶ 27 & Ex. 5; Pl.'s Mem. at 13). As for the third redacted page, the Bureau reports that "no further information can be segregated without releasing information properly withheld" under the FOIA exemptions. (Herbin-Smith Decl. at ¶ 27). The Bureau further contends that if it were to redact all of the exempt information from the eleven pages of records that have been withheld from plaintiff in their entirety, "the only remaining information would be meaningless or nothing but blank fields." (Id.). The Bureau argues that in such a situation it is not required to disclose the meaningless information. (Def.'s Mem. at 15-16).

The Bureau has satisfied its burden of establishing that it is not withholding any reasonably segregable non-exempt information. The affidavit submitted by the Bureau indicates that the information withheld from two of the three pages of redacted records pertains only to other inmates and their visitors, and plaintiff has acknowledged that he is not requesting such

_____

camera review of the records.

information. (Herbin-Smith Decl. at ¶ 27 & Ex. 5; Pl.'s Mem. at 13). Moreover, the Bureau has represented that the information that it has withheld on the third redacted page consists of a third-party's "telephone number, date of birth, social security number [and] answers to questions regarding the individual's criminal history, and whether this individual has contact with other inmates." (Herbin-Smith Decl., Ex. 5). This information falls squarely within the category of private information that we have determined is exempt from disclosure under FOIA. Furthermore, the Bureau's affidavit states that the eleven pages of records withheld from plaintiff in their entirety have been "carefully reviewed" and that the redaction of all exempt material from these records would leave only "meaningless" information or "nothing but blank fields." (Id. at ¶ 27). Ms. Herbin-Smith's affidavit and the accompanying Vaughn index are sufficiently detailed to sustain the Bureau's burden of establishing that no reasonably segregable non-exempt information has been withheld from plaintiff. Cf. Elec. Privacy Info. Ctr. v. Transp. Sec. Admin., 2006 WL 626925, *6 (D.D.C. Mar. 12, 2006) (describing agency's burden to provide detailed explanation of segregability analysis).

In a further effort to pierce the cited exemptions, plaintiff contends that the Bureau's background checks on his prospective

visitors would have revealed no information about certain categories of information, such as their criminal histories, which plaintiff asserts are non-existent. Therefore, he argues, these categories of information can be segregated and disclosed to him. (Pl.'s Mem. at 10-13; Pl.'s Reply Mem. at 2-3). Putting aside the question of whether the factual predicate of plaintiff's argument -- that is, that certain categories of his prospective visitors' background checks would be blank -- is correct, we note that the Bureau is not required to provide the plaintiff with mere templates of its forms, to the extent that such disclosure would not serve a relevant public purpose. <u>Warren</u>, 2000 WL 1209383, at *5. As we have determined that there is virtually no public interest in establishing that the Bureau reviews the backgrounds and criminal histories of inmates' prospective visitors through the disclosure of the requested records, we do not consider the potential that some categories of information in the investigatory records would be blank to establish the existence of reasonably segregable information.

     In sum, we conclude that the Bureau has satisfied its burden of establishing that it conducted an adequate search for documents responsive to plaintiff's FOIA request, and that the information that has been withheld from those records is exempt from

disclosure. Furthermore, the Bureau has established that it is not withholding any reasonably segregable portion of non-exempt information. We therefore recommend that defendant's motion for summary judgment be granted, and that plaintiff's cross-motion for summary judgment be denied.

### B. Plaintiff's Motion to Amend His Complaint

Plaintiff has sought leave to file a complaint pressing a claim under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), for damages for the loss of his clothing while he was in federal custody, or alternatively to raise such a claim in this proceeding. (Pl.'s Mem. at 14; Pl.'s Reply Mem. at 1, 4). We interpret plaintiff's request as one to amend his complaint to include a Bivens claim. In light of our recommendation that defendant be awarded summary judgment on plaintiff's FOIA claim, we recommend that plaintiff's motion to amend his complaint be denied, recognizing that plaintiff is of course free to file a separate suit seeking damages under Bivens or another legal theory.

Rule 15(a)(2) of the Federal Rules of Civil Procedure specifies that courts should "freely give" leave to amend "when justice so requires." As explained by the Supreme Court, such leave

is to be liberally granted:

> If the underlying facts or circumstances relied upon by
> a plaintiff may be a proper subject of relief, he ought
> to be afforded an opportunity to test his claim on the
> merits. In the absence of any apparent or declared
> reason-such as undue delay, bad faith or dilatory motive
> on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of
> the amendment, futility of amendment, etc.-the leave
> sought should, as the rules require, "be freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). Accord SCS Commc'ns, Inc.

v. Herrick Co., 360 F.3d 329, 345 (2d Cir. 2004). We are cautioned

to be especially accommodating of pro se litigants' motions to

amend, although such motions may be denied if they would be futile.

Fulton v. Goord, 591 F.3d 37, 45 (2d Cir. 2009).


Plaintiff's belated efforts to seek damages for the loss of

his clothing through this FOIA action are misplaced. Judicial

review of an agency's withholding of records requested under FOIA

focuses on the sufficiency of the agency's search for responsive

records and the applicability of the statutorily-defined exemptions

from disclosure. Given that we have recommended that defendant be

granted summary judgment on plaintiff's FOIA claim, we consider

granting plaintiff's request to amend the complaint to assert an

entirely different cause of action -- perhaps against additional

defendants -- at this late date to be unjustified in light of the significant delay that it undoubtedly would cause in resolving this matter. <u>See</u> <u>Dowcraft Corp. v. Smith</u>, 2004 WL 626801, *1 (W.D.N.Y. Feb. 17, 2004). <u>Cf.</u> <u>State Teachers Retirement Bd. v. Fluor Corp.</u>, 654 F.2d 843, 856 (2d Cir. 1981). Of course, plaintiff is free to file a separate suit pressing a claim for damages, although we express no opinion as to the potential merits of such a claim.[13]

CONCLUSION

For the reasons stated, we recommend that defendant's motion for summary judgment be granted and that plaintiff's cross-motion for summary judgment on his FOIA claim be denied. We also recommend that plaintiff's motion to amend his complaint be denied and that his claims against the individual defendant, Janice Galli McLeod,

---

[13] To the extent that plaintiff argues that the Bureau's purported bad faith in responding to his FOIA request prevented the disclosure of information that was necessary for him to file a timely <u>Bivens</u> claim, he may be able to seek redress through equitable tolling of the statute of limitations in a separate <u>Bivens</u> action. <u>See</u> <u>Valdez v. United States</u>, 518 F.3d 173, 182-83 (2d Cir. 2008) (noting that equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim."). Of course, we offer no opinion on the merits of such a position, nor on any <u>Bivens</u> claim (or any other potential claim, such as under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 <u>et</u> <u>seq.</u>) that the plaintiff may raise in a subsequent suit.

be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Paul A. Crotty, Room 735, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986).

Dated: New York, New York
       March 12, 2010

$\mathcal{U}$

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been
mailed today to:

Mr. Mitchell Kalwasinski
#82-A-4795
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

Emily E. Daughtry, Esq.
Assistant United States Attorney
United States Attorney's Office, S.D.N.Y
86 Chambers Street
New York, NY 10007

37